# In the United States Court of Federal Claims

No. 18-186C
(Filed: March 11, 2020)
FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **PATRICIA FIELDS,** | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jack Bradley Jarrett, III*, Alan Lescht & Associates, PC, Washington, DC, for Plaintiff

*Ashley Akers*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and Deborah A. Bynum, Assistant Director, U.S. Department of Justice, Washington DC, for Defendant.

## OPINION AND ORDER

**DAMICH,** Senior Judge.

On February 6, 2018, Patricia Fields ("Plaintiff"), filed a Complaint in this Court seeking damages for the alleged breach of a settlement agreement between Plaintiff and the United States ("Defendant"), through its agency, Naval Hospital Camp Lejeune, Marine Corps Base Camp Lejeune, North Carolina ("Agency") (Defendant and Agency, collectively, "the Government"). Specifically, Plaintiff alleges that the Government's breach caused her to incur "at least $102,000.00" in lost wages and consequential damages. Compl. at 5.

On May 9, 2018, the Government filed an Answer. Thereafter, on September 7, 2018, the Government filed a motion to dismiss for lack of subject-matter jurisdiction. On December 12, 2018, the Court issued an Order and Opinion denying the Government's motion to dismiss. ECF No. 17. In particular, the Court held that Plaintiff met her limited burden of establishing that the settlement agreement can be fairly interpreted as mandating money damages in the event of breach. Thereafter, discovery ensued. After several motions for extension of time, discovery closed on November 15, 2019.

Pursuant to the briefing schedule provided by the parties, on November 22, 2019, the

Government filed a motion for summary judgment ("Def.'s Mot.").[1]  In its motion, the Government agreed that the settlement agreement constituted a valid contract.  It further agreed that in light of that, an obligation or duty arose out of the contract, and that the Government breached the contract.  Def.'s Mot.at 6.  In admitting liability, the Court need only address the question of damages.  In particular, the Court must determine whether the Plaintiff is able to establish that the breach caused any damages.  For the reasons set forth below, the Court holds that Plaintiff has not done so.  The Court, therefore, **GRANTS** the Government's motion for summary judgment.

## I.      BACKGROUND

Plaintiff was employed as an athletic trainer from June 7, 2010 until her termination on February 4, 2011. Def.'s Mot., ECF No. 37, at 2.  Plaintiff claims that she struggled with PTSD during her employment with the Agency and had requested accommodations for her PTSD and mental health conditions prior to her removal. Pl.'s Resp., ECF No. 38, at Appx7.

Following her departure from the Agency in 2011, Plaintiff applied to several athletic trainer positions with the Federal government, including positions with the Agency and the Department of the Army, and with private employers, but did not receive any job offers.  Def.'s Mot., Ex. 1, at Appx 0001-0324; Appx 0125; Pl.'s Resp. at Appx17, 20.  Sometime in 2012, Plaintiff filed an informal charge of discrimination against the Agency, alleging discrimination based on physical and mental disabilities.  Def.'s Mot. at Appx 0125; Pl.'s Resp. at Appx17.

On February 26, 2013, Plaintiff and the Agency, through the assistance of an EEO mediator, negotiated a settlement agreement to resolve Plaintiff's pending EEO claim.  Pl.'s Resp. at Appx7.  Under the terms of the negotiated settlement agreement, Plaintiff agreed to withdraw her complaint, and in exchange, the Agency agreed to: "remove the document that indicated [Plaintiff] was terminated for lack of performance and instead provide documentation that she resigned her position for personal and family medical reasons," seal the record of the Plaintiff, and appoint investigations into allegations of false information on Plaintiff's time cards and the release of Plaintiff's private and personal information to prospective employers and to inform Plaintiff of the results.  Pl.'s Resp. at Appx2.  The Agency also promised to "provide a neutral reference to prospective employers of [the Plaintiff] with dates of employment and a general description of her duties." *Id.*  Again, the Government agrees it breached this settlement agreement. Def. Mot. 6.

## II.     DISCOVERY

While in discovery, and in responding to the Government's interrogatories, Plaintiff explains that she spoke to employees in the human resources office at the Minneapolis VA in 2014 or 2015 and approached hiring managers and program directors at conferences she

---

[1] Rather than filing a cross-motion for summary judgment as provided for in the parties agreed upon scheduling order Plaintiff chose to only file a response.  ("Pl.'s Resp.").  The Government timely replied to such.

attended, but did not receive any job offers.  Pl.'s Resp. at Appx19.  Plaintiff also indicates that she reviewed job boards for positions with the Federal government but did not apply to openings for which she was qualified because she knew or had reason to know that the Agency would not make good on its promises.  Pl.'s Resp. at Appx8-9, 19-20.  Similarly, Plaintiff indicates that from 2013 to 2018, she searched for positions with private employers, but did not apply to any openings due to her concern that the Agency would or had in fact breached the settlement agreement.  Pl.'s Resp. at Appx9.

Plaintiff further provided a damages calculation to the Government that approximated Plaintiff's damages in the amount of $274,142.92 for lost wages and benefits and in excess of $500,000 for emotional distress; and pre- and post-judgment interest and attorney's fees.  *See* Def.'s Mot. at 4.

## III.   SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a) of the Rules of the United States Court of Federal Claims (RCFC), the Court shall grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." The moving party may satisfy this burden by "showing – that is 'pointing out to the out to the [trial court] – that there is an absence of evidence to support the nonmoving party's case,'" in which case "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-327 (1986).

"[A] party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record," which "may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence." *Id.*  "[T]he nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party," but cannot rely on the "mere pleadings themselves." *Id.*  In ruling on a motion for summary judgment, the [trial court] is not confined to the materials cited, but it "may consider other materials in the record." RCFC 56(c)(3).

## IV.   DISCUSSION

To recover damages for breach of contract, "a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).  The Government has conceded that there is (1) a valid contract between the parties, (2) that an obligation or duty arose out of the contract, and (3) that it breached the agreement.  The Court, therefore, turns its attention to (4) damages caused by the breach.

Damages for breach of contract are recoverable provided they are: (i) reasonably foreseeable at the time of contracting, (ii) caused by the breach of the promisor, and (iii) proved

with reasonable certainty. *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001). A plaintiff bears the burden to establish each element by a preponderance of the evidence. Accordingly, if one element is not satisfied, the claim must fail.

The Government argues that Plaintiff is unable to establish causation or damages with reasonable certainty. The Government's arguments are based on Plaintiff's failure to produce any evidence showing that Plaintiff lost employment as a result of the Agency's breach of the settlement agreement. Plaintiff disagrees. Plaintiff maintains that she lost employment opportunities and experienced a worsening of her psychiatric disorders as a result of the Agency's breach of the settlement agreement. It is Plaintiff's position that these injuries are sufficient to support the Court's award of consequential damages and damages for emotional distress. The Court disagrees.

Plaintiff also argues that there are genuine issues of material fact with respect to damages that prevent the Court from granting the Government's motion. The genuine issues of material fact are relevant to Plaintiff's damages for emotional distress. Because, as discussed herein, Plaintiff is unable to recover emotional distress damages as a matter of law, the issues of fact Plaintiff identifies in her response are immaterial.

The Court addresses the parties' arguments below.

## A. Damages based on Lost Employment Opportunities

"As a general rule, '[a] non-breaching party is not entitled, through the award of damages, to achieve a position superior to the one it would reasonably have occupied had the breach not occurred.'" *Kansas Gas and Electric Co. v. United States*, 685 F.3d 1361. 1366 (Fed. Cir. 2012) (citing *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2003)). Accordingly, a plaintiff is entitled to recover only such damages that are caused by the breach of the promisor. To meet this requirement, the Federal Circuit has held that a plaintiff must show that the damages would not have occurred "but for" the breach. *See, e.g.*, *Vt. Yankee Nuclear Power Corp. v. Entergy Nuclear Vt. Yankee, LLC*, 683 F.3d 1330, 1350 (2012) ("'damages for breach of contract require a showing of causation,' which in turn necessitates a 'comparison between the breach and non-breach worlds'") (citing *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268, 1273 (Fed. Cir. 2008) ). Stated differently, to recover damages for breach of contract, a plaintiff must "allege and prove a plausible but for world." *Bluebonnet Savings FSB v. United Sates*, 67 Fed. Cl. 231 (2005). Alternatively, depending on the facts of a particular case, the Federal Circuit has stated that the trial court has discretion to use the less stringent "substantial factor" test. *See American Savings Bank, F.A. v. United Sates,* 98 Fed. Cl. 291 (2011); *see also Citizens Fin. Servs. v. United States,* 64 Fed.Cl. 498, 504 (2005); *California Federal Bank v. U.S.*, 395 F.3d 1263 (2005). Additionally, "[d]amages do not extend to remote consequences of the breach. Similarly, mitigation efforts may result in direct savings that reduce the damages claim." *Kansas Gas and Electric Co.*, 685 F.3d at 1367.

The Government argues that Plaintiff is unable to establish causation or damages with reasonable certainty. In support, the Government cites Plaintiff's failure to produce any evidence showing: that Plaintiff applied to any open positions for which Plaintiff met the

minimum qualifications, that any prospective employer denied Plaintiff employment based on the information contained in Plaintiff's personnel file or any other records that the Agency maintains with respect to the Plaintiff, or that any prospective employer had knowledge of or was at all influenced by the Agency's failure to inform Plaintiff of the results of the investigations.

In response, Plaintiff does not dispute that Plaintiff's responses to the Government's discovery requests and initial disclosures do not show that a prospective employer denied Plaintiff employment as a result of the Agency's breach of the settlement agreement. Rather, Plaintiff claims that because of the Agency's failure to inform her of the results of the investigations and the fact that the personnel file she received on April 26, 2016 contained multiple references to her termination and no indication that she had resigned for personal and family medical reasons, Plaintiff was "unable to apply to jobs with the federal government or with private companies because she knew that the [Agency] would inform those employers that she had been terminated for cause." Pl.'s Resp. at Appx19-20. Specifically, Plaintiff maintains that the Agency's breach cost her the opportunity to apply to positions with the Minneapolis VA, with the Federal government, and with employers she approached at certain conferences she attended. Relying on *Redgrave v. Boston Symphony Orchestra*, 855 F.2d 888 (1st Cir. 1988), Plaintiff argues that the fact that she has identified specific opportunities that she would have applied to in the absence of the Agency's breach is sufficient to support her claim for damages.

The Court agrees with the Government. Plaintiff has failed to demonstrate that she would have been selected for one of the positions that she claims she would have applied to had the personnel file she received in April 2016 contained no references to her termination and included documentation that she resigned due to personal and family medical reasons and had she been informed of the results of the investigations. Accordingly, the Court is unable to conclude that the Agency's breach is either the "but for" cause or a substantial casual factor with respect to Plaintiff's failure to secure any of these positions and the associated pay. This is necessarily so, for example, because: in the absence of the Agency's breach, it is not evident that Plaintiff would have applied to the open positions, and even assuming that she would have applied, it is not evident that she would have been selected among the many well-qualified candidates. Even assuming that Plaintiff would have been selected, it is not evident that Plaintiff's new employer would not have learned about the Plaintiff's medical condition or the fact of her termination from speaking to one of the Plaintiff's former co-workers. Conversely, had Plaintiff applied to any of the positions that she says were available, notwithstanding the Agency's alleged breaches, it is not evident that the Agency would have provided an uncorrected version of Plaintiff's personnel file to a prospective employer, nor is it evident that a prospective employer would not have drawn negative inferences from the Agency's provision of a "neutral reference." Nor is it evident that Plaintiff would not have secured employment notwithstanding the Agency's breach.

Additionally, Plaintiff's assertions are insufficient to show damages, caused by the Agency's breach, with reasonable certainty. The Court's award of any amount of damages based

on Plaintiff's lost opportunity theory is speculative and would place Plaintiff in a position superior to the one it would reasonably have occupied had the breach not occurred.[2]

Plaintiff's reliance on *Redgrave* case is misplaced. To begin, since it is a First Circuit decision applying Massachusetts contract law, it is not binding precedent on this Court. Even so, the First Circuit's ruling only lends support to this Court's conclusion that something more than Plaintiff's vague statements that she would have applied to certain opportunities in the absence of the Agency's breach is required.[3]

## B.  Damages for Emotional Distress

As discussed above, as a result of the Agency's breach of the settlement agreement, Plaintiff also seeks damages for emotional distress. In her response, Plaintiff claims that the

---

[2]  Additionally, although not addressed by the parties' briefs, Plaintiff is precluded from seeking damages in this instance. When Plaintiff knew or had reason to know of the Agency's breach, Plaintiff was required to notify the EEO director within thirty days. *See* 29 C.F.R. § 1614.504; *see also* Section IV.H. of the parties' settlement agreement.

[3]  In particular, in *Redgrave*, the First Circuit found that Redgrave's testimony regarding certain professional opportunities that she expected to materialize in the absence of the defendant's cancellation of Redgrave's performance contract was insufficient to support an award of consequential damages. *Redgrave*, 855 F.2d 888, 900. However, for one of the identified professional opportunities, Redgrave also offered the producer's testimony explaining that he decided not to employ Redgrave because of the defendant's cancellation of Redgrave's performance contract. *Id.* The First Circuit found that Redgrave could recover the amount of damages supported by the producer's testimony. *Id.*

Plaintiff also relies on a Fourth Circuit case, *Rice v. Community Health Ass'n*, 203 F.3d 283 (Fourth Cir. 2000). In this case, a physician sought damages for lost professional opportunities resulting from the hospital's breach of the physician's employment contract. In support of his claim, the physician relied on *Redgrave*, 855 F.2d 888. *Id.* at 288. The Fourth Circuit, applying West Virginia contract law, determined that although West Virginia would recognize a claim like Redgrave's, the physician neither alleged nor proved that the hospital's breach resulted in the loss of future "identifiable professional opportunities" that would have been available to the physician absent the hospital's breach. *Id.* at 289. In particular, the Fourth Circuit found that the physician: "failed to present evidence that the hospital's breach actually influenced any identifiable potential job offers. Instead, he offered expert testimony of two doctors who opined generally that an emergency room physician who was fired for sexual harassment or whose previously employer refused to comment on his qualifications would experience substantial difficult in obtaining a full-time position. These experts did not testify that the physician had applied for employment with them or that they had reviewed applications that the physician had submitted to other hospitals. Thus, their testimony, unlike that of the producer in *Redgrave*, "did [nothing] more than … highlight the potential problems" the physician might experience in obtaining comparable employment." *Id.*

Agency's failure to inform her of the results of the investigations into allegations of false information on her time cards and the release of Plaintiff's private and personal information to prospective employers was "a major external stressor," which caused Plaintiff to experience a worsening of her pre-existing mental health conditions, which in turn caused Plaintiff to experience cognitive difficulties, including short-term memory loss.[4]  Pl.'s Resp. at Appx21.

The Federal Circuit has not directly addressed the circumstances under which this Court may award damages for emotional distress. However, in discussing the concept of "consequential damages" at common law, the Federal Circuit recited that:

> Under the traditional contract law approach, "[i]t is well established that, as a general rule, no damages will be awarded for the mental distress or emotional trauma that may be caused by a breach of contract." John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 14.5(b), at 549 (4th ed.1998); *see also* Williston, *Williston on Contracts* §§ 1338, 1341, at 200, 214; Restatement (Second) of Contracts § 353. To be sure there are exceptions, such as contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Restatement (Second) of Contracts § 353 cmt. a; 5 Arthur L. Corbin, *Corbin on Contracts* § 1076, at 434 (1964). In these cases, however, breach of the contract is particularly likely to cause serious emotional disturbance. Restatement (Second) of Contracts § 353, cmt. a. Moreover, with the limited exception of contracts for the delivery of messages concerning death, damages for mental suffering are usually refused absent wanton and willful misconduct. Corbin, *Corbin on Contracts* § 1076, at 434. Ordinary negligence does not suffice. *Id.* at 434–35, 254 S.E.2d 611.

*Bohac v. Dep't of Agriculture*, 239 F.3d 1334, 1340 (Fed. Cir. 2001).  Similarly, under the Restatement approach: "[r]ecovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."  Restatement (Second) of Contracts § 353 (1981).

Plaintiff argues that this case fits within the second exception provided by the Restatement—that is, "the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."  First, citing this court's decision in *Dobyns v. United States*, 118 Fed. Cl. 289 (2014), Plaintiff argues that because the parties entered into the settlement agreement to resolve Plaintiff's pending claim based on emotional distress, serious

---

[4]  Attached to Plaintiff's response is a "Declaration of Patricia Fields."  Among other things, the declaration is not in proper form.  The Government indicated in its reply that it does not dispute the factual statements contained therein.  The Government also argues that Plaintiff's claim for emotional distress damages is not part of the complaint and is therefore not properly before the Court.  Notwithstanding, the Court's opinion addresses whether emotional distress damages are recoverable for breach of contract based on the facts and circumstances alleged in the complaint.

emotional disturbance was a particularly likely result of the Agency's breach.  Second, Plaintiff argues that the Agency's conduct with respect to the breach was particularly egregious since the Agency "[was] aware that Plaintiff suffered from PTSD and was particularly fragile at the time the parties reached the agreement," but yet "refused to perform minor tasks it promised to perform in the agreement."  Pl.'s Resp. at 10. In support, Plaintiff cites a Maryland district court case, *Munday v. Waste Management of North American, Inc.*, 997 F.Supp. 681 (D. Md. 1998), in which the court awarded emotional distress damages for breach of a settlement agreement where defendant's employees "were aware of [the plaintiff's] emotional problems and acted with actual malice."

First, the mere fact that the parties entered into the settlement agreement to resolve Plaintiff's pending discrimination claim, which if fully adjudicated, may have entitled Plaintiff to recover damages for emotional distress or may have been based on facts and circumstances giving rise to a separate claim against the Agency for emotional distress, is immaterial if the Agency's future commitments are not intended to remediate the facts and circumstances giving rise to Plaintiff's underlying discrimination claim.  In other words, Plaintiff's serious emotional disturbance must be a particularly likely result of the Agency's failure to fulfill its commitments pursuant to the terms of the parties' settlement agreement.

In responding to the Government's motion to dismiss for lack of jurisdiction, Plaintiff argued that the Agency's commitments relate to Plaintiff's ability to secure employment, including its commitments to inform Plaintiff of the results of the investigations into allegations of false information on Plaintiff's time cards and the release of Plaintiff's personal information. Plaintiff now argues that: "Plaintiff bargained for assurances that her record was clear and that her private medical information would not be released to prospective employers so Plaintiff could move on and find a new job" and that the "[Agency's] breach of these non-monetary assurances was a breach of a personal, noncommercial obligation that was likely to cause mental pain and anguish." Pl.'s Resp. at 9-10.

Consistent with its prior decision in this case, the Court finds that the Agency's commitments were intended to prevent Plaintiff from being denied future employment based on Plaintiff's record as the Agency maintained it prior to the agreement and that "[b]y its terms, the Government was required to take certain actions that would affect Plaintiff's prospects of future employment, which 'inherently relate[s] to monetary compensation.'"  ECF No. 17.

Because the Agency's commitments relate to Plaintiff's ability to secure future employment, the Court concludes that the settlement agreement is plainly distinguishable from the categories of contracts cited by the Restatement.  Accordingly, contrary to what Plaintiff asserts, the nature of the contract in this case does not provide an exception to the general rule prohibiting recovery of emotional distress damages for breach of contract.

With respect to Plaintiff's reliance on *Dobyns*, in that case, the court's award of emotional distress damages was based on the agency's breach of an implied obligation to ensure the safety of plaintiff and plaintiff's family and that agency employees would not discriminate against the plaintiff. 118 Fed. Cl.at 319. In finding that emotional distress damages were recoverable, the court emphasized that agency's breach placed plaintiff and plaintiff's family at

risk of physical injury.  *Id.*  Thus, even if the Court were to consider it as persuasive authority, the nature of the breached obligations in *Dobyns* differ from those alleged here.

Moreover, as discussed above, the Federal Circuit has stated that, with the "limited exception of contracts for the delivery of messages concerning death, damages for mental suffering are usually refused wanton and willful misconduct …[o]rdinary negligence does not suffice." *Bohac*, 239 F.3d at 1340.  Both cases cited by the Plaintiff are consistent with this observation. Essential to the court's award of emotional distress damages in *Dobyns* was its determination that agency officials breached the covenant of good faith and fair dealing by acting with a complete lack of diligence and cooperation with respect to its obligations under the settlement agreement at issue, placing plaintiff and plaintiff's family at risk of physical injury. 118 Fed. Cl.at 319.  Likewise, in *Munday*, the Maryland district court found that the defendant and its employees acted with "actual malice" by making plaintiff's workplace as unpleasant as possible, despite defendant's contractual obligation to "not retaliate" against the Plaintiff for filing a workplace discrimination complaint against the defendant. 997 F.Supp. at 687.  With respect to the severity of the defendant's retaliatory conduct in this case, the Maryland district court noted that it was of a nature "that no reasonable employee should be expected to endure." *Id.*

Plaintiff argues that the facts of this case are identical to those in *Munday*.  In particular, Plaintiff claims that during the negotiation of the settlement agreement she had an emotional and psychological breakdown and that her supervisor, Commander Earl Frantz, was present at the mediation and was aware that Plaintiff suffered from PTSD and had suffered a breakdown when he terminated Plaintiff's employment with the Agency. Pl.'s Resp. at Appx17.  She also asserts that Commander Frantz was aware of her struggles with PTSD through the issues that she had during her employment with the Agency. *Id.*  In *Munday*, the defendant exploited its knowledge of the Plaintiff's emotional problems to make Plaintiff's workplace as uncomfortable as possible in breach of its promise not to retaliate against the Plaintiff. 997 F.Supp. at 686-688. Based on the terms of the parties' written agreement, Plaintiff's struggles with PTSD and fragile emotional state during the negotiation of the settlement agreement are not related to the Agency's contractual obligations and are therefore irrelevant.  *Cf.* Restatement (Second) of Contracts § 353, cmt. a, Illustration 1.

Additionally, Government officials are presumed to act in good faith. *See, e.g., Am–Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002).  To rebut this presumption, there must be some evidence suggesting a specific intent to injure the plaintiff on the part of the government. Plaintiff's complaint alleges that the Agency failed to provide Plaintiff the results of the investigation despite Plaintiff's request for them.  It also alleges that Plaintiff requested the Agency EEO Director correct the Agency's noncompliance with the settlement agreement on October 6, 2017, but the Agency refused to correct its breach. Compl. at 3. In its response, Plaintiff asserts that Agency officials were aware that Plaintiff suffered from PTSD and suffered an emotional breakdown during the parties' negotiation of the settlement agreement.  The remaining materials in the record fail to provide the Court with any additional information regarding Plaintiff's attempts to enforce the agreement or the Agency's conduct with respect to the alleged breaches.  Accordingly, the Court has no factual basis from which it can

infer that Agency officials acted with "actual malice" towards the Plaintiff or a complete lack of disregard and cooperation with respect to its obligations under the settlement agreement.

## V.     CONCLUSION

For the reasons set forth above, the Government's motion for summary judgment is **GRANTED**.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Edward J. Damich</u>
EDWARD J. DAMICH
Senior Judge